# Staunton

BANE v. ADAIR AND OTHERS, AND BANE, ADMINISTRATOR v. ADAIR AND OTHERS.

September 7, 1914.

1. WILLS—*Construction—Intention of Testator—Individual Property —Partnership Property.*—The intention of a testator is not to be gathered from one clause alone of his will, but from the whole will. The scope and plan of the testator can only be ascertained by comparing the various provisions of his will with one another, and his purpose can be best effectuated by construing them, if possible, so that all can stand. Applying this rule to the case in judgment, it is clear that the testator, who owned individual property and also an interest in a partnership, in using the language "all my money and personal property" had reference to money and property which he owned in his individual right as distinguished from that which he owned in common with his partner.

2. WILLS—*Specific Legacy—Partnership Property—Pecuniary Legacy.* A bequest of a testator's partnership personalty is as specific as a bequest of his individual personalty, and a pecuniary bequest not charged by the testator upon any particular portion of his estate is payable out of the general personal estate, which includes the partnership personalty as well as the individual personal estate.

3. WILLS—*Construction—Case in Judgment—"Heirs" Meaning Children.*—A testator who had sold to two of his sister s sons, who were her only children, a tract of land for $1,000, on credit, by his will says, "My undivided property to go to my brother * * less $1,000 with five years' interest to the Francis heirs." Mrs. Francis, the mother of the two sons, was still living at the time of the testator's death, and it was insisted that the above clause was only applicable in the event that Mrs. Francis did not survive the testator.

*Held*: The word "heirs," in the connection used, was manifestly used in the sense of children, and that the testator regarded this un-

paid purchase money, for which he held no security, as a debt due him, and was providing the sons with the means of paying the same to his estate.

4.  PARTNERSHIP—*Surviving Partner—Surplus—Distribution.*—It is the duty of the surviving partner to collect the assets of the firm, and apply them so far as necessary to the firm debts, and to distribute the surplus between himself and the personal representative of the deceased partner.

5.  PARTNERSHIP—*Surviving    Partner—Surplus—Rights    of    Personal Representative of Deceased Partner.*—When the surviving partner has a surplus of the firm assets in his hands for distribution, he becomes debtor to the estate of his deceased partner as to that partner's share in the surplus.   There is no difference between the debt then subsisting and any other debt due the decedent's estate, so far as the personal representative of the deceased partner is concerned, and it is equally his duty to collect and administer both.   The personal representative of the deceased partner alone has the right to sue the surviving partner for a settlement, unless fraud, collusion, refusal to sue, etc., be shown.

6.  EXECUTORS AND ADMINISTRATORS—*Debts and Legacies—Payment by Court of Fund in Hand.*—There are cases where the court, with a fund under its immediate control, will pay it directly to the party entitled, but the case in judgment is not of that class.   Here, there is no fund under the control of the court, it does not appear that there are no debts to be paid, and there are legacies to be paid, which imposes a duty upon the administrator as well as the payment of debts.

Appeals from a decree of the Circuit Court of Giles county.   Decree for the complainants.   Separate appeals were taken by two of the defendants.

*Reversed.*

The opinion states the case.

*Johnston & Izard, A. B. Whittaker* and *W. B. Snidow,* for Nannie Bane, appellant.

*H. C. Gilmer,* for Bane, administrator, appellant.

*Jackson & Henson, Williams & Farrier,* and *Guy F. Ellett,* for the appellees.

HARRISON, J., delivered the opinion of the court.

These two appeals are from the same decree and have been heard together in this court upon one record which is common to each. The first case involves the proper interpretation of the will of A. J. Bane, deceased, and the second, whether or not certain partnership property bequeathed by the testator should pass through the hands of his administrator or be paid directly by the surviving partner to those entitled thereto.

A. J. Bane, a citizen of Giles county, died in November, 1911, possessed, in his own right, of a large amount of real and personal property, and owning also, in common with one T. Shannon Miller, a large amount of partnership property, real and personal. He had no children, but left surviving him his wife and a niece and nephew of his wife who lived with him. The will, which was written by the testator, is very inartificially and obscurely expressed. It is apparent that, although a successful business man, its author was extremely unlettered.

The first and main controversy arises from the paragraph of the will in which the testator undertakes to povide for his wife, his sisters or their children, and his brother Allen's daughter Nannie, which is as follows:

"My home place I give to my wife Nannie and all my money and personal property at her death she can dispose of it as she thinks best. My undivided property to go to my brother Allen's daughter Nannie and my sisters or their children less $1000.00 with five years interest to the Francis heirs the place Wm. Thompson lived on to be sold and divided as the undivided property

between Mrs. Bennett and my two sisters or their children."

It is contended that by this paragraph the testator gave to his widow all of his personal property including the partnership personalty which was owned by him in common with another; and that he intended thereby to give his sisters, or their children, the residue of his property not otherwise disposed of by the will. This construction can only be reached by ignoring every other part of the will, and looking alone to the clause under consideration. It is familiar doctrine that the intention of the testator is not to be gathered from one clause of the will alone, but from the whole will. The scope and plan of the testator can only be ascertained by comparing the various provisions of his will with one another, and his purpose best effectuated by construing them, if possible, so that all can stand.

When the will before us is considered as a whole, it is quite clear that the testator understood the distinction between property which he owned to the exclusion of others and that which he owned along with another as partnership property. The distinction is repeatedly expressed in the will. If the language "all my money and personal property," found in the first part of the paragraph under consideration, were all, it would pass to his wife all the personalty owned by the testator, including partnership personalty; but, when we interpret that language in the light of the whole will, it is reasonably clear that it was intended to include the personal property owned by the testator alone and was not intended to include his partnership property. Looking to the entire will, it satisfactorily appears that in providing for the objects of his bounty, the testator had in mind the distinction between his individual property and that which he owned in common with his partner, and that his pur-

pose was to give his wife and her niece and nephew the
property owned by him to the exclusion of others, and
to give to his sisters, or their children, and his niece the
partnership property. This purpose he carried out,
with the exception that he gave his wife's nephew a
small amount of live stock, partnership property, which
was on the farm devised to him, and directed the
"Thompson place," which was his individually, to be
sold and divided as his "undivided property" between
his sisters, or their children, and his niece. With
this distinction between his individual and partnership
property in mind, the testator uses appropriate language
for describing the property devised and bequeathed to
his wife: "My home place," "All my money and per-
sonal property," the personal pronoun "my" being em-
ployed in this connection to indicate his individual prop-
erty. Having provided for his wife by giving her his
individual property, he proceeds in the same paragraph
to provide for his sisters by giving them the property he
owned in common with another, describing it as "my
undivided property," thus keeping up a distinction which
runs throughout the will. This distinction further ap-
pears in connection with the devise of the "Thompson
place," which, as already seen, the testator directed to
be sold and divided as his "undivided property" be-
tween his sisters and others. When the testator, in provid-
ing for his sisters, adopted the language, "my undivided
property," he did not, as contended, use *undivided* in
the sense of residue. In the light of the whole will it is
a much more reasonable construction of his language to
conclude that he intended by "my undivided property"
to describe his partnership property which was at the
time undivided and owned in common with another.

Upon this branch of the case, our conclusion is that
the circuit court did not err in holding that, by the para-

graph of the will under consideration, interpreted in connection with the context, the testator gave to his wife his home place, his money and the personal property owned by him individually, and gave to his sisters, or their children, and his niece his partnership property, owned by him in common with another, which is described in his will as his "undivided property."

The second question presented by the record is as to the fund which is to satisfy the $2,000 required to be set apart for the education, etc., of Nannie E. Allen, the niece of the testator's wife.

The devise by the testator of certain lands to Nannie E. Allen is followed immediately by this language: "If our debts are as they are now, I want $2,000 set apart for her education and other purposes."

The appellant insists that this legacy should be paid proportionately by herself and those who take the partnership personalty; in other words, that the testator's whole estate, partnership as well as individual, is alike liable for its payment. The circuit court upheld the contention of the appellees, that the whole legacy must be satisfied from the individual personal property which was given by the testator to his wife, upon the theory that the bequest to the appellees of his partnership personalty was a specific legacy which could not be taxed to pay legacies not expressly charged thereon.

The fallacy of this position is in the fact that if the bequest of the partnership property is a specific legacy, as to which we express no opinion, the bequest of the individual property is likewise a specific legacy. As already seen, the scheme the testator had in mind was to give his individual personal property to his wife and his partnership personalty to his sisters, or their children, and his niece. The testator refers to these two classes of property in the same general way, bequeathing one

class to one person and the remaining class to others. The language with reference to the two bequests is, in effect, as if the testator had said: "All my individual personal property, owned solely by me, I give to my wife, and all my property, owned jointly by me with another, I give to my sisters and my brother's daughter." The character of these two bequests is the same. If one is specific the other is also, and, therefore, each is proportionately liable for the $2,000 legacy to Nannie E. Allen, which was not made by the testator a charge upon any particular portion of his estate, and hence is payable out of the general personal estate which includes the partnership personalty.

The third assignment of error is that the circuit court erred in holding that the provision in the will in regard to the $1,000 to the "Francis heirs" was only applicable in the event that Mrs. Francis did not survive the testator.

The provision in question is found in the clause which provides for his wife, his sisters and his brother Allen's daughter, Nannie. The language is as follows: "My undivided property to go to my brother Allen's daughter Nannie and my sisters or their children less $1000.00 with five years interest to the Francis heirs."

Mrs. Francis was one of the testator's sisters and had two sons. The record shows that some time prior to the publication of his will, the testator had sold to these two sons of Mrs. Francis a piece of land for $1000, and executed to them a deed therefor, but had not taken from them any purchase money bonds. In the light of these facts it is reasonably clear that the testator regarded this unpaid purchase money as a debt due to him, and was providing his nephews with the means of paying the same to his estate by carving the amount out of the legacy he had left to their mother. The effect of this

was to make the Francis family share equally with his other sister and his brother Allen's daughter, Nannie, and at the same time to secure his estate the debt due from his two Francis nephews.

We are unable to appreciate the force of the view taken that the provision under consideration was void because there were no Francis heirs to take the $1,000 and its interest. The word "heirs," in this connection, was manifestly used by the testator in the sense of children, for he knew that his sister was living and is presumed to have known that she would have no heirs until she was dead. There is nothing in the will to indicate that the testator had in view the probable death of his sister leaving heirs, on the contrary, the reverse is to be gathered therefrom. Some meaning must be given, if possible, to the language used, and if practicable intestacy avoided. Our conclusion is that the testator directed this $1,000 and its interest to be deducted from the portion left to Mrs. Francis, for the purpose of having paid to his estate the debt due from her two sons, and that it constitutes a personal asset of the estate, and passes to the testator's widow under that provision of the will which gives her all of his individual personal property.

The fourth and last question raised by the record is whether or not the partnership property, left by the testator, should pass through the hands of his administrator. Counsel for the administrator have, at the bar of this court, stated that they are not contending in this case for the right of their client to administer the partnership real estate, but are only insisting here upon his right to administer the partnership personal property. The limitation thus put upon the question will be observed by us in its consideration.

The record shows that the appellant, T. M. Bane, was duly appointed and qualified as administrator c. t. a. of

the testator, A. J. Bane, on December 20, 1911; executing a bond as such in the penalty of $25,000. This bond was intended to cover both the individual and partnership personal property left by the testator which was to pass into the hands of the administrator, the individual personal property, as shown by the appraisement, amounting only to $7,736.87. The administrator took possession of the individual personal estate, and the partnership personal property remained in the hands of the surviving partner pending a settlement by the latter of the partnership affairs. The duty of the surviving partner was to collect the assets of the firm, to apply them so far as necessary to the firm debts, and to distribute the surplus between himself and the personal representative of his deceased partner. *Tennant* v. *Dunlop,* 97 Va. 234, 33 S. E. 620.

When the surviving partner has a surplus of the firm assets in his hands for distribution, he becomes debtor to the estate of his deceased partner as to that partner's share in such surplus. There is no difference between the debt then subsisting and any other debt due the decedent's estate, so far as the personal representative of the deceased partner is concernd, and it is equally his duty to collect and administer both. The personal representative of the deceased partner alone has the right to sue the surviving partner for a settlement, unless fraud, collusion, refusal to sue, etc., be shown. *Conrad* v. *Fuller,* 98 Va. 16-18, 34 S. E. 893; *Reager's Adm'r.* v. *Chappel,* 104 Va. 14, 51 S. E. 170.

None of the special circumstances which would entitle the appellees to sue the surviving partner are either alleged or proven in this case. Appellees contend that, inasmuch as the partnership assets are bequeathed to them directly, and there are no debts to which the fund arising from the partnership assets are applicable, there

is no need for the personal representative to administer such assets. Bequests are usually made by a testator directly to the objects of his bounty. The individual personal property in this case is a direct bequest by the testator to his wife, and if the appellant should not be allowed to administer the partnership assets of his testator, with equal reason he should be denied the right to collect and administer the individual assets. There is nothing in the record to show that there are no debts to which the testator's partnership assets are applicable. There are legacies to be paid, a duty resting upon the administrator as well as that of paying debts. Cases may and do arise where the court with a fund under its immediate control will pay it directly to the party entitled, but in the case at bar there is no fund under the control of the court, the partnership assets being in the hands of the surviving partner for settlement. The practical effect of the decree appealed from is to constitute the surviving partner the administrator of the testator's partnership personal property, thus diverting much the larger portion of his personal assets from the hands of his administrator whose duty it is, under the law, to receive and administer the same. The record discloses no ground whatever for depriving the appellant of his right to administer the partnership personal assets of his testator, or for imposing that duty upon the surviving partner who is not a bonded officer.

For the errors pointed out the decree complained of must be reversed and these causes remanded to the circuit court for further proceedings not in conflict with the views expressed in this opinion.

*Reversed.*