# Richmond

## MARION T. BAIN AND HARRY L. BAIN, TRUSTEES v. DOUGLAS HOLDEN PULLEY.

November 30, 1959.

Record No. 4980.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*R. Harvey Chappell, Jr.; Alex W. Parker; Alexander Wellford* (*Christian, Barton, Parker & Boyd,* on brief), for the appellants.

*J. Edward Moyler* and *Thomas L. Woodward* (*Moyler & Moyler,* on brief), for the appellee.

EGGLESTON, C. J., delivered the opinion of the court.

Marion T. Bain and Harry L. Bain, trustees for the beneficiaries of the estate of Thomas L. Bain, deceased, filed their bill of complaint in the court below against Douglas Holden Pulley, sometimes hereinafter called the defendant, alleging that he had failed to account to them for all transactions carried on and expenditures made by him in his fiduciary capacity as their manager and agent of a store and certain farms in Southampton county. Invoking the equitable jurisdiction of the court, the bill prayed that the defendant be required to account for his transactions and that the plaintiffs be given judgment against him for the value of any and all properties of the plaintiffs for which he could not properly account.

A demurrer to the bill was overruled and the defendant filed an answer conceding the fiduciary relationship but denying that he had not properly accounted for his transactions. The answer further alleged that the bill should be dismissed on the ground of laches. Subsequently the defendant filed a plea of account stated, alleging in substance that he had made, stated and settled his accounts with the plaintiffs annually and that these had been accepted and agreed to and settled upon by the parties.

After the evidence had been heard ore tenus the trial court rendered an opinion from the bench dismissing the bill. From a decree to this effect the plaintiffs have appealed claiming that the decree and the supporting opinion of the court are contrary to the law and the evidence. The defendant has assigned cross-error to the action of the court in overruling his demurrer to the bill.

These are the underlying facts: In 1936 Thomas L. Bain, a bachelor and a prosperous farmer in Southampton county, Virginia, died leaving a large estate consisting of seventeen farms, a mercantile store at Ivor, and considerable personal property. Under the terms of his will the property with which we are here concerned was devised and bequeathed to his brothers and sisters and their children. In June, 1936, these beneficiaries entered into a written contract with the defendant, Pulley, whereby the latter was employed "as the agent" of the beneficiaries to operate and manage the farms and mercantile business which they had derived under the will. In consideration of an annual salary, Pulley was authorized to purchase seed, fertilizer, machinery and implements; to employ and pay for such labor as was necessary in the operation of the properties; to sell the produce and stock raised on the farms; to enter into agreements, leases and other obligations with tenants; to collect rents, debts and receivables, and, in general, to do what was necessary for the operation and maintenance of the properties.

It was further provided that Pulley should "open and keep a proper set of books which shall reflect accurately and separately the operation of the said farms and mercantile business and the receipt of all funds from any source and the disbursement thereof," and that he would "account to the said owners from time to time * * * and render them proper statements of his operation and management."

Pursuant to this agreement Pulley continued in the employ of the beneficiaries until he was compelled by ill health to resign, effective on January 1, 1956. During his employment he kept and maintained all books and records pertaining to the estate business and properties in the Bain store at Ivor. These books and records were kept entirely in Pulley's handwriting until his illness in 1955, after which they were kept under his direction and supervision by his son, Robert H. Pulley. The defendant made all bank deposits and drew all checks for the estate.

The evidence shows that over the years the beneficiaries received substantial profits from Pulley's operations of the Bain properties. At the same time Pulley conducted his own farming and other business operations from which he accumulated a considerable estate for himself.

In the meantime, under a trust agreement dated December 20, 1951, the  en beneficiaries of the Bain estate conveyed all of their interest in t   properties to Marion T. Bain and Harry L. Bain, trustees, the

plaintiffs in the present suit. Under this instrument the trustees were given full power to hold, manage and dispose of the properties in such manner as they deemed in the best interests of the beneficiaries, and were specifically authorized and empowered to sue and be sued and to institute any and all proceedings to accomplish the purposes of the trust.

Beginning in January, 1952, and continuing through January, 1956, Pulley rendered to the trustees and beneficiaries what was termed an "income report," consisting of a list of items of income and disbursements for the preceding year. These reports were prepared by Arthur Shands, an accountant, from information supplied by Pulley. They were not verified or checked with the records by the accountant or the trustees or the beneficiaries. While each of these reports detailed the "cash in bank" at the beginning and the end of the current year, it did not show that the figures had been reconciled with the records of the estate or those of the bank. A portion of the profits shown by these reports was distributed among the beneficiaries, and a portion was left in the bank under Pulley's control for operating expenses. A copy of each report was given to the beneficiaries for income tax purposes.

Prior to Pulley's resignation as manager and agent there had been an audit of his accounts in 1943 for the years 1941 and 1942. While this audit disclosed some discrepancies, these were satisfactorily explained. Between 1943 and 1956 there was no further audit of Pulley's records and accounts, nor were there any accountings or statements rendered by him to the trustees and beneficiaries other than the "income reports" referred to above.

Upon Pulley's resignation, and in appreciation of his services, the beneficiaries of the Bain estate presented to him an inscribed silver tray. Robert H. Pulley succeeded his father as manager of the Bain estate properties, at which time the trustees determined to have the defendant's books and records audited for the two years immediately preceding, namely, 1955 and 1954. The audit, by Toler & Company, certified public accountants of Richmond, was begun in January, 1956, and completed in the fall of that year. It revealed discrepancies of more than $100,000 for the years 1954 and 1955. Subsequent audits for the years 1951, 1952 and 1953 disclosed additional discrepancies of more than $100,000. While the auditors found that the defendant had commingled some of his personal funds with those of the estate, they found no evidence that he had misappropriated any funds. The

substance of their report was that because of "the lack of adequate records" it was "impossible to determine satisfactorily" that the defendant had accounted for all funds which had come into his hands.

On the other hand, Charles G. Thedieck, an auditor employed by the defendant, testified that accepting as correct the records and entries made by the defendant in the regular course of business, he found only minor discrepancies in them.

There is evidence on behalf of the defendant that some of the beneficiaries, including one of the trustees, knew of the bookkeeping methods employed by the defendant and criticized by the auditors. But there is no evidence that prior to the receipt of the report of the auditors, in 1956, either the trustees or the beneficiaries knew of any discrepancies in the defendant's records or that they were inadequate for their purpose.

Based upon this evidence the trial court entered a decree dismissing the bill, the effect of which was to hold that the plaintiffs were not entitled to a judgment against the defendant for the amount of the discrepancies disclosed in the reports of their auditors, and were not entitled to a further accounting by the defendant. The court thus summarized its conclusion: "The court is of the opinion that the beneficiaries, having accepted the distributions as made, having acquiesced in the method of bookkeeping and the method in which the business was conducted, they cannot, in equity, ask for recovery from the agent at this time."

We agree with the holding of the trial court that the plaintiffs are not entitled on the evidence adduced to a judgment against the defendant "at this time." The transactions of the defendant were numerous and involved, and there is a sharp conflict in the evidence, not settled by the trial court, as to the accuracy of the auditors' reports. Until this conflict is settled it is impossible to say whether the defendant is indebted to the beneficiaries in any amount.

But it does not follow that the defendant should be absolved of all duty to account for his transactions. The general duty of an agent who is required to handle money is thus laid down in Restatement of the Law of Agency, 2d, Vol. 2, § 382, p. 185: "Unless otherwise agreed, an agent is subject to a duty to keep, and render to his principal, an account of money or other things which he has received or paid out on behalf of the principal." See also, Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 4, § 1421, p. 1078; 2 Am. Jur., Agency, § 293, p. 231; 1 Mich. Jur., Agency, § 67, p. 324, and cases there cited.

Where such fiduciary relation exists the principal may invoke the aid of a court of equity in requiring an accounting by his agent. Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 4, § 1421, p. 1079; Restatement of the Law of Agency, 2d, Vol. 2, § 399, p. 233; 2 Am. Jur., Agency, § 424, p. 332; 1 Mich. Jur., Agency, § 67, p. 324.

"In an action for an accounting, the agent has the burden of proving that he paid to the principal or otherwise properly disposed of the money or other thing which he is proved to have received from the principal." Restatement of the Law of Agency, 2d Vol. 2, § 399, p. 233. See also, 3 C. J. S., Agency, § 320(a), p. 268.

Applying these principles, we find no merit in the assignment of cross-error to the action of the trial court in overruling the demurrer to the bill. The bill alleges a trust relationship and prays for an accounting between the fiduciary agent and the beneficiaries of the trust. Clearly this is within the equitable jurisdiction of the court.

■ We do not agree that the acceptance by the beneficiaries of the income reports for the years 1951 to 1955, both inclusive, was a valid and sufficient reason for denying the prayer for an accounting. Clearly, these reports did not constitute an annual accounting between the parties and a settlement of their transactions. As has been said, the reports merely showed a list of items of income and disbursements and the amount of cash in bank for the respective years. There was no showing that the stated amount of cash had been reconciled with the records of the estate or those of the bank. Nor was there any evidence that the trustees, beneficiaries and defendant agreed or considered that they were final accountings for the respective years. See 1 Mich. Jur., Accounts and Accounting, § 3, p. 66. Indeed, during the final argument of counsel, the trial court had ruled that these reports "do not constitute an accounting."

But even if the furnishing and acceptance of these reports be considered an account stated for the respective years, it does not constitute an estoppel but is subject to impeachment for mistake or error clearly proved. 1 Mich. Jur., Accounts and Accounting, §§ 7, 8, p. 70; 1 Am. Jur., Accounts and Accounting, § 30 ff., p. 285 ff.

■ Neither do we agree with the trial court's holding that since the beneficiaries knew of and acquiesced in the defendant's "method of bookkeeping and the method in which the business was conducted," they are estopped to demand an accounting of him. There is no showing that the defendant's method of keeping his books and conducting the business were improper. Indeed, he insists in his brief that

these were proper and that his records correctly show his transactions. Nor is there any evidence that the beneficiaries had actual or implied knowledge of, or acquiesced in, the discrepancies disclosed by the evidence, or the lack of records and vouchers which might have explained and accounted for such discrepancies. Not until they received the auditors' preliminary report in August, 1956, did the beneficiaries know of these alleged discrepancies and lack of adequate records. Within a few months thereafter the present suit was brought. Hence, there is no showing that the beneficiaries were guilty of laches which would preclude their right to require an accounting of the defendant for the recent period in controversy, from 1951 to 1955, both inclusive.

The trial court erred in dismissing the bill. Because of the complexities of the accounts it should have referred the cause to a commissioner in chancery for the purpose of examining the books, records and vouchers and determining the accountability of the defendant to the plaintiffs for the period stated. 1 Mich. Jur., Accounts and Accounting, § 14, p. 78.

Since the defendant was not an expert bookkeeper, and the plaintiffs knew this, his method of keeeping proper books and records and to take and preserve the necessary vouchers or receipts evidencing his transactions should not be measured by the methods and practices of such an expert. His duty will be satisfied in this respect if it appears from the evidence that he has acted "reasonably in view of the business customs of the community and the nature of his employment." Restatement of the Law of Agency, 2d, Vol. 2, § 382, Comment a, p. 185. See also, Mechem on Agency, 2d Ed., Vol. 1, § 1334, p. 971.

The decree appealed from will be reversed and the cause remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*