PRESENT: All the Justices

SUSAN E. PHILLIPS

v. Record No. 200840

OPINION BY
JUSTICE D. ARTHUR KELSEY
OCTOBER 21, 2021

JOHN MARK ROHRBAUGH, JR., IN HIS
INDIVIDUAL CAPACITY AND IN HIS
CAPACITY AS CO-EXECUTOR OF THE
ESTATE OF JOHN MARK ROHRBAUGH, SR., ET AL.

FROM THE CIRCUIT COURT OF MADISON COUNTY
Lon E. Farris, Judge Designate

John Mark Rohrbaugh Sr. died in 2016. Two years later, his daughter filed claims

seeking both an equitable and a statutory accounting from her brother in his former capacity as

an agent managing their father's financial affairs pursuant to a power of attorney and in his

present capacity as co-executor of their father's estate. She also filed a claim against the other

co-executor of her father's estate, seeking an equitable accounting. The circuit court granted

demurrers as to all claims and dismissed the action because, under the facts pleaded, neither

theory of accounting applies to this case. We agree and affirm.

I.

"Because this appeal arises from the grant of a demurrer, we accept as true all factual

allegations expressly pleaded in the complaint and interpret those allegations in the light most

favorable to the plaintiff." *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 72-73 (2019) (citation

omitted). "To survive a challenge by demurrer," factual allegations must be made with

"sufficient definiteness to enable the court to find the existence of a legal basis for its judgment."

*Squire v. Virginia Hous. Dev. Auth.*, 287 Va. 507, 514 (2014) (citation omitted).

In 2004, John Mark Rohrbaugh Sr. executed a durable power of attorney ("POA") naming his son, John Mark Rohrbaugh Jr., as his agent.[1]  In relevant part, the POA provided:

> Pursuant to the provisions of section 11-9.6 of the Code of Virginia of 1950, as amended, it is my intention that, except as specifically provided for herein, my agent shall **never** be required to make disclosure or inspection of my affairs, or their actions as my agent, either under this instrument or otherwise, to any third party.  I authorize my agent to refuse any request for disclosure or inspection, and they have the sole discretion to determine the scope, if any, of disclosure or inspection they may wish to permit. I authorize my agent as an expense of the agency to resist any proceeding to compel such disclosure or inspection. . . .  Without limitation of the foregoing sentences in this paragraph, I specifically intend that my agent shall never be required to make disclosure of their actions or permit inspection of my affairs under this instrument, pursuant to section 11-9.1, section 11-9.6, section 37.1-134.22 of the Code of Virginia of 1950, as amended, or any other statute.

J.A. at 158-59 (emphasis in original).[2]

The POA granted authority to the agent to make gifts to Rohrbaugh Sr.'s descendants or spouses of his descendants, including a descendant who is serving as his agent, "only if (a) [Rohrbaugh Sr.] ha[d] not excluded and disinherited such donee as a beneficiary of my estate in my will as it is written at the time of such gift(s), or (b) any gift to such donee shall be approved by at least one adult beneficiary under my will."  *Id.* at 156.  Rohrbaugh Jr. also had a joint money market account with Rohrbaugh Sr. that Rohrbaugh Jr. used to facilitate Rohrbaugh Sr.'s care.  Rohrbaugh Jr. never contributed to the account and claimed no interest in it.

----

[1] The POA also named German P. Culver Jr. as Rohrbaugh Sr.'s agent and John J. Davies III as a successor agent in the event that Rohrbaugh Jr. or Culver were not able or willing to serve.  Both Culver and Davies, however, never exercised any authority under the POA and resigned as agents in December 2008, leaving Rohrbaugh Jr. as the sole agent.

[2] The statutes mentioned in this provision have been replaced by the Virginia Power of Attorney Act.  *See* 2010 Acts ch. 632, at 1130-32; 2012 Acts ch. 614, at 1271-73.  Former Code § 11-9.6 correlates to current Code § 64.2-1612(I), and former Code § 37.1-134.22 correlates to current Code § 64.2-1614(B).

2

In 2006, a full-time caregiver began living with Rohrbaugh Sr., and in early 2009, Rohrbaugh Jr. began assisting with the management of his father's finances because he "was diminished in capacity and not capable of managing his finances on his own." *Id.* at 135-36. Rohrbaugh Jr. acted as his father's agent until his father's death in January 2016. Rohrbaugh Sr. was survived by Susan E. Phillips, his daughter, and his son. Rohrbaugh Sr.'s will named Phillips and Rohrbaugh Jr. as beneficiaries and named Rohrbaugh Jr. and John J. Davies III as co-executors of his estate.

In September 2017, Phillips sent a letter to counsel for the co-executors of Rohrbaugh Sr.'s Estate, requesting information about transactions that Rohrbaugh Jr. had made under the POA, including gift transfers to Rohrbaugh Sr.'s descendants, his descendants' spouses, or any entity in which a descendant or descendant's spouse held an interest. Phillips alleged that Rohrbaugh Jr. had engaged in suspicious or self-dealing activity in his capacity as Rohrbaugh Sr.'s agent, and her 2017 letter listed numerous transactions for which she was seeking additional information. The letter concluded that Phillips's requests should be taken "at face value" as simply seeking "the facts necessary to understand these various related transactions and not as an assertion that any improper actions were taken by Rohrbaugh Jr. in any capacity." *Id.* at 173.

After Rohrbaugh Jr. provided Phillips with some of the information that she had sought, Phillips deemed his responses to be unsatisfactory. In December 2018, Phillips sent counsel for the co-executors a demand letter to protect all her interests in Rohrbaugh Sr.'s Estate. Phillips also sent Rohrbaugh Jr. a letter in 2019 requesting information "about various unexplained and questionable transactions" in the joint money market account between the years of 2010 and 2015. *Id.* at 141. These transactions included (1) compensation payments to Rohrbaugh Jr. and his wife; (2) payments to credit card companies, various other companies, Rohrbaugh Sr.'s

family members, and non-family members; and (3) transactions related to Rohrbaugh Sr.'s real properties that were used by Rohrbaugh Jr. Phillips alleges that Rohrbaugh Jr. has not satisfied her request for clarification and information regarding the joint-account transactions.

Phillips filed a complaint in January 2018 against Rohrbaugh Jr. in his individual capacity and against Rohrbaugh Jr. and Davies in their capacities as co-executors of the Rohrbaugh Sr. Estate. After the circuit court granted demurrers, Phillips filed an amended complaint in December 2019. The amended complaint asserted two counts. The first count requested a statutory accounting under Code § 64.2-1614(A) from Rohrbaugh Jr. concerning his actions pursuant to his father's POA. The second count requested an equitable accounting from both co-executors under Code § 8.01-31. The amended complaint sought the repayment of funds due to the Estate if the circuit court later discovered that Rohrbaugh Jr. had inappropriately taken funds from Rohrbaugh Sr. or otherwise violated his fiduciary duties.

No allegation in the amended complaint, however, specifically asserted that Rohrbaugh Jr. or Davies had breached any fiduciary duties.[3] Instead, the amended complaint alleged only that Rohrbaugh Jr. had conducted several "suspect transactions," including among other things failing to collect a debt he owed to his father, making unsecured loans, and purchasing real property for more than its fair market value. J.A. at 136. The amended complaint named the Rohrbaugh Sr. Estate as "an interested party because of the Co-Executors' refusal and/or inability to investigate the matters raised in this Complaint" and because the relief sought by Phillips would benefit the Estate. *Id.* at 133. Because Phillips alleged that the suit would benefit

---

[3] This was not an oversight. Throughout the trial court proceeding and while on appeal, Phillips has asserted that under her theory of recovery no such allegations were necessary. *See* J.A. at 362, 411, 413, 456; *see also* Oral Argument Audio at 13:44 to 13:49.

4

the Estate, she also requested reimbursement of her expenses, including attorney fees, under the common-fund doctrine.

Rohrbaugh Jr. and Davies again filed demurrers to the amended complaint. As to both counts, Rohrbaugh Jr. and Davies argued that Rohrbaugh Sr.'s POA specifically forbade his agent from making disclosures to anyone under specific disclosure statutes "or any other statute," *id.* at 158-59. Rohrbaugh Sr. had a right to make that determination, Rohrbaugh Jr. and Davies contended, because the Virginia Power of Attorney Act expressly recognizes it. In response, Phillips argued that the Act authorized a judicial proceeding to obtain these disclosures despite the principal's expressed intent to the contrary.

The circuit court agreed with Rohrbaugh Jr. and Davies, holding that Phillips had no statutory right to obtain an accounting from her brother concerning his management of their father's affairs under the POA. The court also found no legal basis for Phillips's claim against Rohrbaugh Jr. and Davies in their capacities as co-executors of Rohrbaugh Sr.'s Estate. For these reasons, the circuit court granted both demurrers and dismissed the amended complaint with prejudice.

II.

On appeal, Phillips asserts eight assignments of error that cluster around two main arguments. First, Phillips argues that she has asserted a viable claim for an equitable accounting under Code § 8.01-31. Second, she contends that the circuit court misconstrued the Virginia Power of Attorney Act and that properly understood, the Act granted her a statutory right to an accounting. We disagree with both of these arguments.[4]

_____

[4] Phillips also argues that her accounting claims, had they been successful, would have entitled her to an award of attorney fees under the common-fund doctrine. *See generally duPont*

5

A.

1.

We begin with an analysis of Phillips's equitable accounting claim. "The action of account-render was one of the most ancient actions known to the common law." 3 John Norton Pomeroy, A Treatise on Equity Jurisprudence § 1420, at 2193 (2d ed. 1899). "The common-law action of account, or account-render," was used to "adjust and settle mutual accounts where there was some privity or mutual confidence existing between the parties, and its object was to recover the balance ascertained to be due." Martin P. Burks, Common Law and Statutory Pleading and Practice § 101, at 210 (T. Munford Boyd ed., 4th ed. 1952); *see also* 4 John B. Minor, Institutes of Common and Statute Law 1216-17 (1879).

The common-law accounting action, however, fell into disuse as chancery courts began entertaining "bills for account," William Minor Lile, Notes of Lectures on Equity Jurisprudence 264, 271 (1921), that covered a wider range of fiduciary relationships and offered a greater range of remedies. The General Assembly codified this shift from common law to equity when it abolished the statute providing for an "action for account" in 1954, *see* 1954 Acts ch. 593, at 765, and replaced it with the "accounting in equity" action in 1956, *see* 1956 Acts ch. 160, at 163. *See also* T. Munford Boyd, *Virginia Procedural Legislation of 1954*, 40 Va. L. Rev. 1097, 1099-1100 (1954); Burks, *supra*, § 101, at 38 & n.7 (1961 Supp.). Incorporating equitable principles, the statute establishes "a two-stage process": "First, the account is to be stated; this is the determination of who owes what. Second, the account is to be settled; this is the payment by the debtor of the money found to be owing." Bryson, *supra* note 4, § 12.03[2][c], at 12-13.

---

*v. Shackelford*, 235 Va. 588, 594-95; W. Hamilton Bryson, Bryson on Virginia Civil Procedure § 14.04, at 14-15 (5th ed. 2017). The circuit court, she contends, erred in not granting this relief. Given our holdings in this case, we need not address this argument.

6

Historically, the first stage was initiated by an "interlocutory order," and the second stage ended with a "final order." *Id.*

An equitable accounting should not be misunderstood as merely a judicially managed discovery proceeding in anticipation of a possible lawsuit.[5] It is best understood as a means to enforce an implied duty of disclosure and reckoning arising out of an equitable relationship. "Traditionally, an accounting in equity could be had against any agent, trustee, guardian, committee, partner and many others, fiduciaries or not, because the relationship is 'equitable.'" Kent Sinclair, Virginia Remedies § 44-1, at 44-1 to -2 (5th ed. 2016). Unless excused by the principal, an agent has "a duty to keep, and *render to his principal*, an account of money or other things which he has received or paid out on behalf of the principal." *Bain v. Pulley*, 201 Va. 398, 402 (1959) (emphasis added) (citation omitted). "It is upon the principle of trust mainly, that equity takes jurisdiction at the instance of the principal to compel his agent to account." *Huff v. Thrash*, 75 Va. 546, 548 (1881). Thus, the very nature of an equitable accounting action presupposes that the party seeking the accounting has an equitable right to demand an account and a corresponding right to settle a disputed account in the courts. "Every bill for an account," as Dean Langdell succinctly said, "must be founded upon an obligation to render an account." C.C. Langdell, *A Brief Survey of Equity Jurisdiction*, 2 Harv. L. Rev. 241, 242 (1889); *see also* Lile, *supra*, 271-72.

In the context of a principal-agent relationship, therefore, an equitable accounting claim necessarily arises out of a discrete *cause of action* — the agent's breach of his fiduciary duty to

---

[5] Though subject to various limitations, such a discovery proceeding existed in another form in historical chancery practice, *see French v. Stange Mining Co.*, 133 Va. 602, 614-18 (1922) (discussing the "bill of discovery"), but its utility has been greatly diminished by modern discovery rules of procedure, *see* Bryson, *supra* note 4, § 9.06[1][a], at 9-61 to -62; Burks, *supra*, § 257, at 459-60.

7

provide the required disclosures to his principal. *See* John Adams Jr. et al., The Doctrine of Equity 475-76 (4th Am. ed. 1859); Dan B. Dobbs & Caprice L. Roberts, Law of Remedies § 4.3(5), at 416 (3d ed. 2018). For purposes of asserting a successful equitable accounting claim, it is unnecessary (but permissible) for a principal to go further and allege that stage one of the proceeding would provide evidence of other fiduciary breaches warranting a stage-two award of damages, an order of equitable rescission and restitution, or similar compensatory remedies. *See* Dobbs & Roberts, *supra*, § 4.3(5), at 417-18.

2.

In this case, Phillips and Rohrbaugh Jr. were never in a principal-agent relationship with each other. In his capacity as his father's agent, Rohrbaugh Jr. owed no fiduciary duty to account to his sister concerning his management of their father's financial affairs. She thus has no cause of action in her personal capacity for an equitable accounting against her brother. Apparently realizing this, Phillips claims that she has a right to file an equitable accounting claim against him *on behalf of* their deceased father. We do not agree.

An equitable accounting claim survives the death of the principal, and thus, a claim on behalf of a decedent's estate for equitable accounting may be asserted against inter vivos fiduciaries of the decedent. *See* Code § 8.01-25; *Campbell v. Harmon*, 271 Va. 590, 597-98 (2006). As a general rule, the personal representative of an estate has exclusive standing to sue on behalf of an estate. *See Platt v. Griffith*, 299 Va. 690, 692 (2021); *Reineck v. Lemen*, 292 Va. 710, 722 (2016); *Burns v. Equitable Assocs.*, 220 Va. 1020, 1028 (1980); *see also* Code § 1-234 (defining "personal representative"). Phillips nevertheless contends that she fits within a narrow exception to the general rule that enables certain beneficiaries to serve as ad hoc representatives of an estate under special circumstances. *See generally* John Mitford et al., Mitford's and

8

Tyler's Pleadings and Practice in Equity 251-52 (1890); Joseph Story, Commentaries on Equity Pleadings § 514, at 394-95 (2d ed. 1840). Affirming the circuit court, we find that the general rule — not the exception — applies to this case.

Although we have recognized that "there is no fixed and rigid rule by which to determine what constitutes such special circumstances," *Jeffries v. Antonsanti*, 142 Va. 218, 227 (1925), the exception may apply if the allegations in the complaint, "so far as they are well pleaded," *Beaty v. Downing*, 96 Va. 451, 454-55 (1898), at least approximate the typical scenarios. These scenarios include a showing of "fraud" or the "refusal to sue," *Bane v. Adair*, 116 Va. 587, 595 (1914), as well as "the insolvency of the personal representative, collusion between him and the debtor, the fact that the debtor was . . . a trustee holding property for, or an agent of, the decedent." *Saunders v. Bank of Mecklenburg*, 113 Va. 656, 659-60 (1912) (citation omitted).[6] "A [complaint] which fails to charge these or other special circumstances which will take the case out of the general rule is bad on demurrer." *Id.*; *cf.* George Cooper, A Treatise of Pleading on the Equity Side of the High Court of Chancery 176 (1813) (observing that the typical recitation of special circumstances omits "mere negligence" of the personal representative as a special circumstance).

Here, Phillips does not accuse her brother of fraud or claim that Davies has turned a collusive blind-eye to any wrongdoing. Nor has she alleged any factually supportable cause of action that the Estate could assert against her brother. At best, the complaint speaks of "suspicious transactions," *see* J.A. at 137, in which Phillips claims that Rohrbaugh Jr. engaged. Phillips identifies various "questionable transactions," Appellant's Br. at 34, but does not allege

---

[6] The ellipses in the quote from *Saunders*, 113 Va. at 660, omits the phrase "a partner of the decedent" because we rejected that "dictum" in *Conrad's Adm'r v. Fuller*, 98 Va. 16, 19 (1900).

that he violated any fiduciary duties by participating in these transactions. Several of these specific "suspicious" circumstances associated with his handling of their father's finances involve actions that the POA arguably does not forbid and, in some cases, appears to authorize. *Compare* J.A. at 137-42 (questioning gifts in the amended complaint) *with* J.A. at 156 (authorizing certain gifts in the POA "for any purpose or for no purpose, without limitation as to the amount of such gifts"). In the end, Phillips's argument appears to be no more than an assertion that the "insufficiency of the information," Appellant's Br. at 35, provided by her brother — when considered along with his status as agent, co-executor, and debtor — warrants her reliance on the special-circumstances doctrine.

We hold that the allegations in Phillips's complaint, "so far as they are well pleaded," *Beaty*, 96 Va. at 454-55, do not demonstrate that the circuit court erred by refusing to permit Phillips to serve as a de facto representative of the Rohrbaugh Estate for the purposes of seeking an equitable accounting from Rohrbaugh Jr., either in his capacity as his father's inter vivos agent or as co-executor of the Estate. We similarly see no special circumstances pleaded in Phillips's complaint that warrant an accounting claim against Davies in his capacity as co-executor. We thus affirm the circuit court's grant of the demurrers challenging Phillips's equitable accounting claims asserted on behalf of the Rohrbaugh Estate.

3.

Phillips also claims that as a beneficiary of her father's estate she has a right to assert equitable accounting claims against her brother and Davies in their capacities as co-executors. We agree that she has standing to assert such claims but disagree that she has a right to demand their adjudication in a collateral action that is ancillary to the probate proceeding.

10

"Equitable relief is *discretionary* and hence — even if a party makes a valid showing of the required elements for any given form of relief — there is no assured right to exercise of the court's discretion in his or her favor." *See generally* Sinclair, *supra*, § 42-1[A], at 42-4 (emphasis in original). If a court of law has "concurrent jurisdiction" over a dispute, for example, the disputant seeking equitable remedies generally must show that legal remedies are either unavailable or inadequate — thereby establishing the "prerequisite to the exercise of equitable jurisdiction." *See Oglesby Co. v. Ould Co.*, 117 Va. 546, 554-55 (1915) (citation omitted). "The test of the chancellor's jurisdiction was, from the beginning, as the test of equity jurisdiction has remained substantially to this day, *the absence of a plain and adequate remedy at law*." Lile, *supra*, at 4 (emphasis in original). This limiting principle explains why Code § 8.01-31 provides that an equitable accounting "may be had" rather than "shall be had" in Virginia courts.

In Virginia, the equitable accounting remedy, as applied to personal representatives of probate estates, has been codified in a comprehensive series of statutes. A probate court appoints an executor of a will, *see* Code §§ 64.2-500 to -508, and the executor remains under the court's supervision and control throughout the administration of the probate estate. Under Code §§ 64.2-1300(A) and -1304, a personal representative must account for estate property in an initial inventory of assets and thereafter make periodic accounts to a "commissioner of accounts" shortly after a will is presented to a probate court.[7] "The commissioner of accounts shall state, settle, and report to the circuit court an account of the transactions of a fiduciary, as provided by law." Code § 64.2-1312. "Any interested person," under Code § 64.2-1209,

---

[7] Under certain circumstances not applicable here, a will can waive a personal representative's duty to file accountings with the commissioner of accounts. *See* Code § 64.2-1302.

11

> may, before the commissioner of accounts, insist upon or object to anything which could be insisted upon or objected to by such interested person if the commissioner of accounts were acting under an order of a circuit court for the settlement of a fiduciary's accounts made in a suit to which such interested person was a party.

The commissioner has the power to issue witness subpoenas and compel document production, *see* Code § 64.2-1203, for purposes of conducting "a hearing on either an inventory or an account," 2 Frank O. Brown, Jr., Virginia Practice Series: Probate Handbook § 2:11, at 67 (2020-2021 ed.). If any interested party files an exception to the commissioner's report to the probate court, the court may conduct its own hearing and, if requested, empanel a jury to resolve disputed facts. *See* Code § 64.2-1212(B). In addition, Code § 64.2-1213 allows for suits to surcharge or falsify a report even after it has been confirmed by the circuit court.

After surveying these statutes, the Judicial Council of Virginia has explained the quasi-judicial role served by commissioners of accounts as follows:

> The precedent can be traced to the origins of the office of commissioner of accounts. The present office of commissioner of accounts evolved from the established office of commissioner in chancery. . . . Thus, most circuit courts generally treat the commissioner of accounts as having the same general authority as a commissioner in chancery, in addition to the statutory duties and responsibilities of the commissioner of accounts.

The Standing Comm. on the Comm'rs of Accts. of the Jud. Council of Va., Manual for Commissioners of Accounts 293-94 (6th ed. 2019) (footnotes omitted). Based upon these background principles, the Judicial Council concluded that "the circuit court may refer any matter it deems appropriate to the commissioner of accounts pursuant to its general referral powers to commissioners in chancery." *Id.* We agree with this view.

Our cases recognize that "[t]he Commonwealth established the office of the Commissioner of Accounts 'to afford a prompt, certain, efficient, and inexpensive method' for

12

the settlement of fiduciaries' accounts and the distribution of estates." *Gray v. Binder*, 294 Va. 268, 276 (2017) (citation omitted). The position "evolved from the Commissioner in Chancery, and is 'one of the most important known in the administration of justice.'" *Henderson v. Cook*, 297 Va. 699, 712 (2019) (citation omitted). For good reason, we have recurred to the statutory scheme to emphasize

> how minute, how careful, and how sufficient is the provision made by our statute law for the settlement of the accounts of fiduciaries. It is full, ample, and complete. It guards and protects every interest as amply as could be done by a formal suit in chancery. By the death of the decedent the probate court acquires jurisdiction. It appoints the administrator and commits the estate to his control, and *at every step of his administration the law provides proper machinery by which the fiduciary can be compelled to collect and distribute the funds committed to his care, and to settle his accounts showing the manner in which his trust has been executed.*

*Carter's Adm'r v. Skillman*, 108 Va. 204, 213 (1908) (emphasis added).

In the present case, the circuit court was keenly aware of this procedure. *See* J.A. at 451 (confirming that "not allowing her to have an accounting out of this suit doesn't prevent her from filing her complaints with the accounting in the estate itself with the commissioner"). Convinced that its ruling would not prejudice Phillips's ability to take her dispute to the proper forum, the circuit court dismissed the equitable accounting claims. The chancellor did not abuse his discretion in doing so. Both co-executors of Rohrbaugh Sr.'s Estate remained under the supervisory power of the probate court and under the specific oversight of the court's commissioner of accounts. None of the allegations in Phillips's complaint present factual issues that could not be competently adjudicated during probate with the assistance of the commissioner of accounts and, if desired, an advisory jury.

In short, while a chancellor could allow an equitable accounting suit to go forward as a collateral proceeding, the circumstances in this case fall far short of compelling the chancellor to

13

do so.  We thus affirm the circuit court's dismissal of the equitable accounting claims against

Rohrbaugh Jr. and Davies in their capacities as co-executors of Rohrbaugh Sr.'s Estate.

B.

Phillips also argues that the Virginia Power of Attorney Act, Code § 64.2-1614(A), grants

her a right to file a statutory accounting claim even if she would not otherwise have standing to

do so under equitable principles.  In one respect, she is quite right.  Subsection A of Code § 64.2-

1614 grants standing to several categories of claimants, including a principal's relatives, to

"petition a court to construe a power of attorney or review the agent's conduct, and grant

appropriate relief."  If we were to stop reading there, we might presume (as Phillips does) that

she has an indefeasible right to an accounting.  Four other provisions of the Virginia Power of

Attorney Act, however, make clear that such an assumption would be mistaken.

1.

"A cardinal rule of statutory construction is that a statute be construed from its four

corners and not by singling out a particular word or phrase."  *Commonwealth Nat. Res., Inc. v.*

*Commonwealth*, 219 Va. 529, 536 (1978); *see also Virginia Elec. & Power Co. v. Citizens for*

*Safe Power*, 222 Va. 866, 869 (1981).  Our duty is to interpret "the entire statute — i.e., the

entirety of a single legislative enactment as it appears in the Acts of Assembly as a whole — to

place its terms in context" and to "interpret the several parts of a statute as a consistent and

harmonious whole so as to effectuate the legislative goal."  *Eberhardt v. Fairfax Cnty. Emps.'*

*Ret. Sys. Bd. of Trs.*, 283 Va. 190, 194-95 (2012) (citation omitted).

2.

Guided by these principles, we begin with Code § 64.2-1612(H).  It was adapted from

section 114(h) of a "Uniform Power of Attorney Act" proposed by the National Conference of

Commissioners on Uniform State Laws. *See generally* Andrew H. Hook & Lisa V. Johnson, *The Virginia Uniform Power of Attorney Act*, 44 U. Rich. L. Rev. 107 (2009). Section 114(h) "codifies the agent's common law duty to account to a principal." Unif. Power of Att'y Act § 114 cmt. (2006). In relevant part, Code § 64.2-1612(H) does the same thing while emphasizing two important qualifications:

> Except as otherwise provided in the power of attorney, an agent shall disclose receipts, disbursements, or transactions conducted on behalf of the principal if requested by the principal, a guardian, a conservator, another fiduciary acting for the principal, or, upon the death of the principal, by the personal representative or successor in interest of the principal's estate.

The first qualification states that the statutory duty to make accounting disclosures is owed to a very short list of individuals: the principal and any fiduciaries acting on his behalf or on behalf of his estate. The list does not categorically include any of the principal's relatives. The second qualification ("[e]xcept as otherwise provided in the power of attorney") recognizes the principal's power to forbid his agent from making accounting disclosures to anyone but the principal. Together, these aspects of subsection H "are consistent with the premise that a principal with capacity should control to whom the details of financial transactions are disclosed." Unif. Power of Att'y Act § 114 cmt.

Making the same point, Code § 64.2-1614(D) states: "Upon motion by the principal, the court shall dismiss a petition filed under this section [Code § 64.2-1614], unless the court finds that the principal lacks capacity to revoke the agent's authority or the power of attorney." This provision gives a principal (if alive and mentally competent) the right to unilaterally terminate an accounting action initiated by his relatives or any other parties with standing to assert an accounting action under subsection A. The court "shall" enforce the principal's decision even if

15

the power of attorney does not expressly forbid the principal's relatives from seeking a statutory accounting.

The Virginia Power of Attorney Act also includes a provision not found in the Uniform Power of Attorney Act that addresses accounting actions when the principal is believed to be incapacitated or deceased, Code § 64.2-1612(I) provides, in relevant part:

> Except as otherwise provided in the power of attorney, an agent shall, on reasonable request made by a person listed in subdivisions A 3 through A 9 of § 64.2-1614 who has a good faith belief that the principal suffers an incapacity or, if deceased, suffered incapacity at the time the agent acted, disclose to such person the extent to which he has chosen to act and the actions taken on behalf of the principal within the five years prior to either (i) the date of the request or (ii) the date of the death of the principal, if the principal is deceased at the time such request is made, and shall permit reasonable inspection of records pertaining to such actions by such person. In all cases where the principal is deceased at the time such request is made, such request shall be made within one year after the date of the death of the principal.

This provision expands the list of persons who may have standing to seek an accounting from the agent. That expanded list includes relatives of the principal. Code § 64.2-1614(A)(4). Subsection I, however, includes three limitations. First, those with standing to seek an accounting can obtain one only if they allege "a good faith belief that the principal suffers an incapacity or, if deceased, suffered incapacity at the time the agent acted." *Id.* Second, like subsection H, subsection I includes a proviso ("[e]xcept as otherwise provided in the power of attorney") which gives the principal the power to forbid account-rendering disclosures to anyone but himself. Lastly, in cases in which the accounting is requested after the principal has died, the request must be made within one year of his death.

Phillips's argument must also contend with yet another provision of the Virginia Power of Attorney Act. Code § 64.2-1614(B)(1) provides:

16

> Whether or not supplemental relief is sought in the proceeding, where an agent has violated duties of disclosure imposed by § 64.2-1612, any person to whom such duties are owing may, for the purpose of obtaining information pertinent to the need or propriety of (i) instituting a proceeding under Chapter 20 (§ 64.2-2000 et seq.); (ii) terminating, suspending, or limiting the authority of the agent; or (iii) bringing a proceeding to hold the agent, or a transferee from such agent, liable for breach of duty or to recover particular assets or the value of such assets of a principal or deceased principal, petition a circuit court for discovery from the agent of information and records pertaining to actions taken pursuant to a power of attorney.

This provision, like the others, has carefully drawn boundaries. The proceeding can only be initiated by a "person to whom such [disclosure] duties are owing," which would necessarily exclude anyone barred by the power of attorney from receiving such disclosures. Even those entitled to disclosures, moreover, must allege that the "purpose" of obtaining the agent's disclosures is to determine the "need or propriety" of litigation against the agent. *See* Code § 64.2-1614(B)(1).

3.

The underlying theme of all of these provisions is that courts should respect the personal financial privacy of competent principals while at the same time providing opportunities for others to initiate account-rendering litigation on behalf of incompetent or deceased principals. The Prefatory Note of the Uniform Power of Attorney Act emphasizes this priority: "While the Act contains safeguards for the protection of an incapacitated principal, the Act is *primarily* a set of default rules that preserve a principal's freedom to choose both the extent of an agent's authority and the principles to govern the agent's conduct." Unif. Power of Att'y Act prefatory note (emphasis added).

In this case, the principal's intentions were not understated. Rohrbaugh Sr.'s POA declares: "[I]t is my intention that, except as specifically provided for herein, my agent shall

17

**never** be required to make disclosure or inspection of my affairs, or their actions as my agent, either under this instrument or otherwise, to any third party." J.A. at 158 (emphasis in original). "I specifically intend," he repeated, "that my agent[s] shall never be required to make disclosure of their actions or permit inspection of my affairs under this instrument, pursuant to section 11-9.1, section 11-9.6 [now § 64.2-1612(I)], section 37.1-134.22 [now § 64.2-1614(B)] of the Code of Virginia of 1950, as amended, *or any other statute*." *Id.* at 158-59 (emphasis added). There can be no doubt, therefore, that Rohrbaugh Sr. intended that his son should not be required by any "third party" or "any . . . statute," *id.*, to make account-rendering disclosures to Phillips. It logically follows that Phillips cannot employ the statutory accounting procedure in Code § 64.2-1614(A) to force Rohrbaugh Jr. to make the very disclosures that his father — exercising his rights later recodified in Code § 64.2-1612(H) & (I) — expressly forbade his son from being forced to make.

Subsection A of Code § 64.2-1614, lifted from § 116(a) of the Uniform Power of Attorney Act, provides a list of "persons who have standing" to seek an accounting if the claimant has a right to one. *See* Unif. Power of Att'y Act § 116 cmt. But it was not meant to grant a right to an accounting when other provisions of the same Act expressly forbid it. If it were meant to do so, as Phillips's contends, subsection A of Code § 64.2-1614 would render subsection B(1) superfluous and negate a competent principal's expressed intent to prevent his or her private financial affairs from being disclosed at the mere request of a host of individuals whose only basis for making the claim is that they have "standing" to do so.

We acknowledge Phillips's concern for the need for such information to be disclosed when there is a good reason to believe the principal is incapacitated and possibly being taken advantage of. But the remedy for that scenario was crafted into subsection B(1) of Code § 64.2-

18

1614, and that issue-specific remedy does not apply when a principal makes clear in the power of attorney (as Rohrbaugh Sr. did in his) that he does not want this protection and says so at a time when he was fully competent to make that decision.

The General Assembly made a similar point in subsection I of Code § 64.2-1612. When a competent principal does not expressly reject such disclosures in his power of attorney and later becomes incapacitated or dies, subsection I authorizes relatives and others listed in Code § 64.2-1614(A)(3) to (A)(9) to obtain a statutory accounting under subsection A of Code § 64.2-1614. This provision does not support Phillips's claim, however, because Rohrbaugh Sr.'s POA rejects this remedy, and even if it had not done so, Phillips did not make her request within the applicable one-year period. *See* Code § 64.2-1612(I).

In short, it would never be necessary to meet the requirements of Code § 64.2-1614(B)(1) or Code § 64.2-1612(I) if subsection A provided wholly unrestricted access to an even better judicial remedy. Equally anomalous, under Phillips's interpretation, it would never matter that a principal declared his intent to keep his financial affairs private — a prerogative protected by Code §§ 64.2-1612(H), -1612(I), Code § 64.2-1614(B)(1), and Code § 64.2-1614(D). It would be also inconsequential that, even when no such declaration was made, the individual seeking to obtain the accounting disclosures failed to make her request within the prescribed time frame required by Code § 64.2-1612(H). For these reasons, Code § 64.2-1614(A) cannot bear the interpretive weight Phillips places upon it.[8]

---

[8] Focusing our decision on the "best and narrowest grounds," *Logan v. Commonwealth*, 299 Va. 741, 748 n.4 (2021) (citation omitted), we leave several issues undecided — including Rohrbaugh Jr.'s argument that only claimants with a viable cause of action asserting a breach of fiduciary duty or statutory violation may seek judicial review of an agent's conduct under Code § 64.2-1614(A) and Phillips's counterargument that Code § 64.2-1614(A) authorizes judicial review even in the absence of an assertion of a freestanding cause of action. We are also aware

III.

In sum, the circuit court did not err when it dismissed on demurrer Phillips's equitable

and statutory accounting claims.  The equitable accounting claims should have been asserted, if

at all, in the probate proceeding, and the statutory accounting claim was barred by Rohrbaugh

Sr.'s expressly declared intent to prohibit it in his POA.

*Affirmed*.

---

that in between those two competing views is the possibility that allegations of egregious circumstances, even if technically insufficient to constitute a viable cause of action, could warrant review under Code § 64.2-1614(A) regardless of what the power of attorney might otherwise provide.  In this case, however, we need not and thus do not resolve these hypothetical questions.